UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARLOS DEROMANO,** | } | |
| Plaintiff, | } | |
| v. | } | Case No.: 2:25-cv-00223-RDP |
| **ALABAMA STATE BAR,** | } | |
| Defendant. | } | |
| **CARLOS DEROMANO,** | } | |
| Plaintiff, | } | |
| v. | } | Case No.: 2:25-cv-00224-RDP |
| **ALABAMA JUDICIAL COMMISSION,** | } | |
| Defendant. | } | |
| **CARLOS DEROMANO,** | } | |
| Plaintiff, | } | |
| v. | } | Case No.: 2:25-cv-00225-RDP |
| **NAPHCARE,** | } | |
| Defendant. | } | |
| **CARLOS DEROMANO,** | } | |
| Plaintiff, | } | |
| v. | } | Case No.: 2:25-cv-00226-RDP |
| **JEFFERSON COUNTY SHERIFF'S DEPARTMENT, et al.,** | } | |
| Defendants. | } | |

| | |
|---|---|
| **CARLOS DEROMANO,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:25-cv-00227-RDP** |
| } | |
| **QTC MEDICAL SERVICES, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

These cases are before the court on Plaintiff's five amended civil complaints and five motions for leave to proceed *in forma pauperis*. Plaintiff filed these cases on February 11, 2025, along with five motions for leave to proceed *in forma pauperis*. The cases were referred to a magistrate judge and then consolidated under 28 U.S.C. § 1915(e)(2)(B). (*See* Docs. # 5, 6 in 25-cv-00223). The magistrate judge presiding over the consolidated case ordered Plaintiff to amend the various complaints to cure pleading deficiencies in them. (*See* Doc. # 6 in 25-cv-00223). The magistrate judge warned Plaintiff that a failure to file appropriate amended complaints could result in the dismissal of his cases. (*Id.* at 13). Thereafter, Plaintiff filed five amended complaints, but the magistrate judge concluded that each failed to remedy several deficiencies that the court had outlined, and thus that each were due to be dismissed. The magistrate judge then referred these cases to the undersigned when all parties did not consent to the jurisdiction of a magistrate judge. (Doc. # 10 in 25-cv-00223). After careful review, the court concludes that these matters are due to be dismissed for failure to state a claim.

**I.    Background**

Plaintiff Carlos DeRomano is an Alabama resident who, beginning in February 2024, was the subject of criminal law enforcement and civil judicial proceedings related to charges of "harassing communications, and disorderly conduct from 4-24-24 – 5-1-24, then from 5-29-24 – 6-25-24." (Doc. # 7 at 11 in 25-cv-00223). In the civil proceedings, Plaintiff was accused of

threatening someone with a gun, and Judge Monica Y. Agee issued a temporary restraining order against Plaintiff on March 1, 2024. (Doc. # 7 at 10 from 25-cv-00224). Plaintiff asserts that even though he filed a response, those filings were "left on a desk" for about a week. (*Id.*). On March 11, 2024, Judge Agee held a preliminary injunction hearing that Plaintiff did not attend; however, Plaintiff alleges that he was not notified of the hearing. (*Id.* at 9, 13). Plaintiff asserts that he first heard about the hearing when he received an email from the prosecution on the day of the hearing. (*Id.* at 10). Plaintiff left a voicemail for Judge Bernadette Brown Green, who thereafter reported to police that the email was threatening. (*Id.* at 13). On March 12, 2024, Plaintiff called Judge Green, and they spoke about whether the notice of the hearing had been mailed to Plaintiff; Judge Green maintained that it had been mailed but encouraged Plaintiff to request a new hearing date. (*Id.* at 10-11).

A new hearing was scheduled and occurred on April 12, 2024. (*Id.* at 13). At that hearing, according to Judge Green, Plaintiff "was extremely accusatory, abusive, and disrespectful to the Court and all parties present," did not present any evidence, was disruptive, and refused to answer questions. (*Id.*). The hearing ended abruptly due to Plaintiff's continued use of strong language and profanity. (*Id.*). Shortly after the hearing, Judge Green reported that Plaintiff left several threatening voicemails with the court and sent several emails "that included intimidating, strongly abusive and vulgar language." (*Id.*). Plaintiff contests this characterization and alleges that Judge Green has no evidence and that he never threatened to harm anyone. (*Id.* at 15). On April 17, 2024, Judge Green swore out two criminal complaints against Plaintiff, one for harassing communications and another for disorderly conduct. (*Id.* at 14). Both were based on the events following the April 12, 2024 hearing. (*Id.*). On April 24, 2024, Plaintiff was arrested based on these complaints.

Plaintiff alleges that he attempted to represent himself in the criminal matter but was forced to hire an attorney, Leroy Maxwell, who he claims did nothing to help him. (Doc. # 7 at 7, 11-12,

3

from 25-cv-00223). Plaintiff then alleges that on April 26, 2024, he had a hearing before Judge Michael Streety. (Doc. # 7 at 16, from 25-cv-00224). Plaintiff claims Judge Streety mocked Plaintiff's disabilities and denied him access to representation. (*Id.*). He also alleges that once arrested, he was given a $10,000 cash-only bond, and that he was repeatedly denied the ability to pay it. (Doc. # 7 at 10-11, from 25-cv-00223). Plaintiff further asserts that he incurred significant costs to board his dogs while he was in jail. (Doc. # 7 at 16 from 25-cv-00224). Plaintiff was released from jail on May 1, 2025. (Doc. # 7 at 9 from 25-cv-00223). Plaintiff was jailed again on May 30, 2024 for a failure to appear, which Plaintiff asserts was improper because his scheduled court date was still in the future. (*Id.* at 7, 11). He describes various abuses that occurred in the jail (including being denied holistic medical treatment) and claims that "I died in jail from abuse." (*Id.* at 13). Plaintiff also alleges that on June 6, 2024, although he was scheduled for a hearing before Judge Katrina Ross, he was not retrieved from his cell and the hearing had to be rescheduled. (Doc. # 7 at 18, from 25-cv-00224). Due to this rescheduling, Plaintiff asserts, he died from malnutrition in jail and later had a "severe high blood pressure attack" after he ate salty green beans. (*Id.* at 19). Plaintiff also contends that Pat Ballard denied him due process by not allowing him access to water, gave Plaintiff more jail time out of "vengeance," and allowed opposing counsel (Michael Thompson) to lie. (*Id.* at 20).

     Plaintiff also alleges that on June 12, 2024, his trial began with Michael Thompson as the prosecutor, and that Thompson falsely accused him of sending threatening emails. (Doc. # 7 at 13-14, from 25-cv-00223). Plaintiff asserts that the trial court concluded that Thompson "was lying." (*Id.*). Plaintiff also states that he sent this transcript to the Alabama State Bar. (*Id.*). On June 17, 2024, Plaintiff alleges he appeared for a hearing before Judge Katrina Ross, but he could not leave the jail because his ankle monitor removal was wrongfully delayed. (*Id.* at 18). On June 25, 2024, Plaintiff was released from jail. (*Id.* at 17). He states that he was forced to wear an ankle monitor from June 25 to December 10, 2024. (*Id.* at 12). Plaintiff also alleges that because the trial judge

4

refused to change his red ankle monitor status ("red" indicates he could not leave his home except for specific reasons), his service dog "bled out in my arms (my family)." (*Id.* at 11).

Plaintiff alleges that he filed a state bar complaint against Danny Carr (the head of the District Attorney's office), and that Carr responded that the District Attorney did not speak to Plaintiff because he believed Plaintiff was represented. (*Id.* at 10). In November 2024, the venue for Plaintiff's criminal trial changed and Plaintiff claims he did not receive notice. (*Id.* at 13). In December, he alleges Thompson sent a fraudulently altered audio recording of Plaintiff to the District Attorney and to the trial judge. (*Id.* at 15). Plaintiff then alleges that he successfully argued that being forced to wear an ankle monitor was unconstitutional, but that he encountered opposition when trying to get it removed. (*Id.* at 12-13). Plaintiff further asserts that Ashley Patterson and Demario Thorton lied in court by stating that Plaintiff had a lawyer and was not representing himself. (*Id.* at 9). Plaintiff alleges that he later appeared in a second criminal trial and was not allowed to remain in court and represent himself "because of my medical mask." (*Id.* at 11). He also asserts that the judge allowed the prosecution to enter the altered audio clip of him into evidence and found him guilty based on that clip. (*Id.* at 15).

Plaintiff has also sued the Alabama Judicial Commission, explaining that he has reported eight "justices" to the commission "for violating my civil and constitutional rights as an act of vengeance for their peer" (Doc. # 7 at 8, from 25-cv-00224) and that the commission sent back letters concluding that "they did not do anything unethical, we will not take any action." (*Id.* at 25).

Plaintiff has also sued the jail's medical provider, Naphcare, alleging that during the two time periods that he was in jail, they ignored his holistic health requests, mocked his disabilities, denied him access to clean water, and "lied on [his] medical records to the VA which got [Plaintiff] denied for [his] SS disability." (Doc. # 7 at 5, 11-12, from 25-cv-00225). He also alleges that the nurses at Naphcare lied to him about giving him intestinal medication when they were really

5

administering bipolar medication. (*Id.* at 11). Plaintiff also argues that he was denied his First Amendment right to free exercise of religion when he was not given vegetarian meals. (*Id.*). Plaintiff further alleges that once he was released from jail the first time, on May 1, 2024, he went directly to the emergency room and discovered that he had lost sixty-five pounds and had dark urine due to kidney failure. (*Id.* at 12). At some point, Plaintiff alleges, the jail sprayed an industrial strength horse pesticide to kill lice, which caused him to have an asthma attack, but Naphcare nurses did not give him any medical help. (*Id.* at 13). The next day, Plaintiff alleges, he woke up with bruises that he was told were from being resuscitated due to his having no pulse or breath. (*Id.* at 13-14). After Plaintiff was arrested for the second time, he alleges, he had a medical episode in the dayroom in which he lost consciousness multiple times, and Naphcare nurses incorrectly coded it as a suicide attempt. (*Id.* at 12-13). Plaintiff alleges that around June 14, 2024 he started coughing up blood and Naphcare told him that they could not treat his disabilities. (*Id.* at 14). After being released from jail the second time, on May 13, 2025, Plaintiff asserts that he saw a traumatic brain injury doctor for treatment of brain injuries that he claims to have sustained while in jail. (*Id.* at 15).

Plaintiff has also sued the Jefferson County Sheriff's Department, the Trussville Police Department, the Irondale Police Department, and thirteen deputies, alleging various constitutional violations. (Doc. # 10 at 3, from 25-cv-00226). He then set out various allegations against each deputy, claiming that they permitted the filing of false police reports (*id.* at 9), conducted a warrantless arrest of him on April 24, 2024 that involved the use of excessive force and an unconstitutional search of his house (*id.* at 9-10), handcuffed him so tightly that his hands "swelled up purple" (*id.* at 9) and that this exacerbated pre-existing nerve damage in his hands (*id.*), mocked his disabilities and religion (*id.* at 10), lied about his bond amount (*id.*), forced him to strip while threatening him with physical abuse (*id.*), "slammed [him] into the jail cell bars" (*id.*), tried to force "Jesus Christ onto [him]" (*id.* at 10-11), "tried to make [him] wear a turtle suit as humiliation

6

over the false suicide attempt" (*id.* at 11), shined flashlights in his cell at night (*id.*), did not permit him to use the phone (*id.*), falsely told others that he had threatened to kill a judge (*id.*), refused to provide him medical help (*id.*), put him into general population even though he was classified as in protective custody (*id.* at 12), refused to provide him with clean water or "food I can eat" (*id.* at 12-13), destroyed his front door in a second illegal arrest on May 29, 2024 (*id.* at 12), attempted to murder his service dog (*id.*), worsened his tinnitus disability by blowing out his right eardrum (*id.* at 13), joked about him drinking toilet water (*id.*), threatened to kill him (*id.*), lied to him about food not containing meat when it did (*id.*), lied to the VA about his medical condition (*id.* at 5), and refused to allow him to speak to his counsel to prepare for trial. (*Id.*).

Plaintiff has also sued QTC Medical Services, Inc. ("QTC"), Dr. Laxmi Challa, Lauren Pope, and Michael Thompson. QTC is a health provider that contracted with the VA. (Doc. # 8 at 8, from 25-cv-00227). Specifically, Plaintiff claims that QTC lied to the VA by contending that Plaintiff's medical condition originated from something other than his military service (*id.* at 10-11), that he was mocked when he called QTC and threatened to pull fire alarms in their buildings and told them "I was in my truck with my 2nd amendment rights" (*id.* at 12-13), that the QTC attorney edited an audio recording of Plaintiff calling QTC and played it in a court hearing (*id.* at 13), that QTC committed HIPAA violations (*id.*), that a QTC attorney lied in court by claiming that Plaintiff had threatened to kill people (*id.* at 14) and, as a result, his social security disability being denied (*id.* at 15), and that his service dog died because of QTC's lies. (*Id.* at 5).

## II.     Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards,

nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### III. Analysis

Below, the court evaluates each of the five complaints and explains why each is due to be dismissed.

A.    *DeRomano v. Alabama State Bar, et al.*, 25-cv-00223

Plaintiff's claims against the Alabama State Bar, the Jefferson County District Attorneys, clerks at the District Attorney's office, Michael Thompson, and Leroy Maxwell fail for various reasons. Plaintiff's claims against the Jefferson County District Attorneys fail because they violate Rule 8 of the Federal Rules of Civil Procedure and because the Eleventh Amendment affords immunity to the District Attorneys in their official and individual capacities. As to the District Attorney's office, Plaintiff asserts violations of his Eighth Amendment right to "be treated as a human"; Sixth Amendment rights to be heard as a representative of himself; and First Amendment right to free exercise of religion to not kill people or be accused of threatening to kill people. (Doc. # 7 at 9-10, from 25-cv-00223).

Plaintiff's allegations violate Rule 8 of the Federal Rules of Civil Procedure because they do not contain a short and plain statement of the claims showing why he is entitled to relief. For example, although he asserts that Defendants violated his Eighth Amendment right "to be treated as a human," Plaintiff merely details that he was treated "with cruel and unusual punishment while attaching excessive fees and fines upon me" and implies that he was "subjected to punishments that are disproportionate to the severity of the crime committed or that are considered inhumane." (*Id.*). These allegations are entirely speculative. Plaintiff does not even state specifically what cruel and unusual punishments or excessive fees and fines were imposed on him. As best the court can tell, the bond imposed on Plaintiff was $10,000. Plaintiff presents no allegations as to why this forms the basis of his Eighth Amendment allegation, and certainly presents no legal basis for such a claim.

More importantly, the Jefferson County District Attorney's Office and the District Attorneys (Carr, Patterson, and Thornton) are immune from suit under the Eleventh Amendment because they were acting in their official capacities. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity,

9

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Federal courts (including the Eleventh Circuit) have interpreted this immunity to extend to state prosecutors because they are state employees and thus, represent the state. *See Williams v. Monroe Cnty. Dist. Att'y*, 702 F. App'x 812, 813-14 (11th Cir. 2017). Further, even if Plaintiff were suing them in their individual capacity, the action would be barred because prosecutors enjoy absolute immunity "for actions undertaken while functioning as an advocate for the government." *Id.* at 813; *see also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Although Plaintiff alleges that Carr, Patterson, and Thornton lied to him during the judicial proceedings and that such dishonesty was "outside of their oaths" and "guiding principles," these alleged actions still occurred while the prosecutors were acting as advocates for the government. (Doc. # 7 at 10-16). Therefore, the District Attorney's Office and the individual prosecutors are entitled to prosecutorial immunity and Plaintiff's claims against them fail.

The claims against the Alabama State Bar also fail because the Eleventh Amendment confers immunity to state bar associations and their employees because they, like state courts, are "arms of the State." *See Caffey v. Ala. Sup. Ct.*, 469 F. App'x 748, 751 (11th Cir. 2012).

Plaintiff's claims against his former lawyer, Maxwell, fail because he cannot recover for a violation of a constitutional right by a private actor unless that actor is engaging in state action. *See Charles v. Johnson*, 18 F.4th 686, 693-94 (11th Cir. 2021). None of Plaintiff's allegations suggest that Maxwell was engaging in state action during the events alleged in the complaint. Moreover, even if Plaintiff were bringing a state law legal malpractice claim against Maxwell, this would not confer federal question jurisdiction on this court and thus, this court would be without subject matter jurisdiction. For all these reasons, Plaintiff's claims against the Alabama State Bar, the Jefferson County District Attorneys, clerks at the District Attorney's office, Michael Thompson, and Leroy Maxwell are due to be dismissed.

      B.     *DeRomano v. Alabama Judicial Commission*, 25-cv-00224

Plaintiff's claims against the Alabama Judicial Inquiry Commission also fail. He alleges that the commission "covers up the rights violations of other judges in the State of Alabama" and "they do not care" whether judges are acting "outside of their oaths." (Doc. # 7 at 4-5, from 25-cv-00224). However, Plaintiff "has no right secured by the Constitution to proceed before or receive relief from a . . . judicial oversight commission." *Watkins v. Griffin*, 2016 WL 7192105, at *4 (M.D. Ala. Oct. 31, 2016). To proceed on this claim, Plaintiff must identify a specific right that was violated. Under the pro se complaint form heading asking Plaintiff for the specific federal statutes or constitutional provisions at issue, he listed the canons of judicial ethics, as well as his First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment rights. (Doc. # 7 at 3). The canon of judicial ethics is not a federal statute or constitutional right. To the extent Plaintiff has listed alleged constitutional rights violations, he has not explained how his rights were violated, nor has he complied with Rule 8 by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For these reasons, Plaintiff's claims against the Alabama Judicial Commission are due to be dismissed.

      C.     *DeRomano v. Naphcare*, 25-cv-00225

Plaintiff's claims against Naphcare also fail. He alleges that Naphcare violated his First, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights because its doctors, nurses, and employees mistreated and mocked him in various ways. (Doc. # 7 at 3, 11-13, from 25-cv-00225). Naphcare is a private corporation, but of course a private entity that contracts "to provide medical services to inmates" may be liable for a violation of a constitutional right under 42 U.S.C. § 1983 because "it performs a function traditionally within the exclusive prerogative of the state." *Bucker v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). In such circumstances, a federal court applies the standard for liability outlined in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). This standard allows an entity to be sued directly under § 1983 if "the action that is alleged to be

11

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "[T]o demonstrate a policy or custom, it is 'generally necessary to show a persistent and widespread practice.'" *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)). Although Plaintiff alleges the details of the specific actions that individual nurses and Naphcare staff took involving him, he has not identified any Naphcare policy statement, ordinance, regulation, or official decision, nor has he identified any persistent and widespread practice. Indeed, other than his statement that "[e]very single citizen who[] goes into this jail is subject to this treatment" (Doc. # 7 at 15), which he does not support with any plausible facts, Plaintiff only describes the treatment that *he* received. Finally, Plaintiff has not sufficiently alleged any claim of deliberate indifference to his medical needs. For all these reasons, Plaintiff's claims against Naphcare are due to be dismissed.

> D. *DeRomano v. Jefferson County Sheriff's Dep't, et al.*, 25-cv-00226

Plaintiff's claims against the Jefferson County Sheriff's Department, the Trussville Police Department, the Irondale Police Department, and thirteen individual deputies also fail. Plaintiff's claims against the Sheriff's Department and the two police departments are due to be dismissed because in Alabama, neither a sheriff's department nor a police department "is [] a legal entity and, therefore, is not subject to suit or liability under section 1983." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).

Plaintiff's claims against the thirteen deputies allege that they violated his First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment rights. (Doc. # 10 at 3, from 25-cv-00226). Plaintiff's allegations against each deputy are set out in more detail above, but suffice it to say he generally alleges that they filed false police reports (*id.* at 9), conducted a warrantless arrest and an unconstitutional search of his house (*id.* at 9-10), forced him to strip

while threatening him with physical abuse (*id.*), "slammed [him] into the jail cell bars" (*id.*), and refused to provide him with clean water or "food I can eat" (*id.* at 12-13).

As currently pleaded, none of these allegations state a claim for a discernible constitutional or federal statutory violation. For example, although there is a cause of action under the Fourth Amendment for arrests or prosecutions based on false police reports, *see Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945-49 (11th Cir. 2008), Plaintiff does not claim that the allegedly false police reports in this case led to these outcomes. And, although Plaintiff vaguely alleges an illegal arrest and unconstitutional search of his house (stating that Deputy Khalania "violated my 4th amendment right by violating my secure property rights, which lead to my home being destroyed"), he does not provide any detail or explain what made the arrest illegal, how any search occurred, or how any search violated his property rights or Fourth Amendment rights. Although Plaintiff does claim that Deputy Khalania handcuffed him so tightly that his hands "swelled up purple" (*id.* at 9) and that this exacerbated pre-existing nerve damage in his hands (*id.*), "only the most exceptional circumstances will permit an excessive force claim on the basis of handcuffing alone." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). Plaintiff has not sufficiently alleged such a claim.

Plaintiff's complaints about incidents in jail include that Deputies Yukho, Thomas, and others violated his First Amendment right to free exercise of religion because they tried to force "Jesus Christ onto [him]" (*id.* at 10-11) and falsely claimed that he was suicidal even though this was against his religion. (*Id.*). To have stated a claim under the First Amendment, however, Plaintiff must have pleaded plausible facts showing that the deputies substantially burdened his sincere exercise of religious beliefs. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice."). A "substantial burden" "involves something more than an incidental effect or inconvenience on religious exercise and 'is akin to significant pressure which

13

directly coerces the religious adherent to conform his or her behavior accordingly.'" *Robbins v. Robertson*, 782 F. App'x 794, 801 (11th Cir. 2019) (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). Although Plaintiff has claimed that insensitive comments were made by the deputies, he has not alleged facts to show that the deputies or their comments placed any significant pressure on him to coerce him to conform his religious behavior.

Plaintiff's complaint also asserts that his Eighth Amendment rights were violated because he was forced to strip while being threatened with physical abuse, slammed into jail bars, and not provided clean food and water. An excessive-force Eighth Amendment claim encompasses both a subjective and objective component. *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020). The subjective component requires that "the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." *Id.* (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002)). Plaintiff has not pleaded that the deputies' actions of forcing him to strip while threatening him or slamming him into jail bars was done "sadistically and maliciously" or even for the purpose of causing harm. Here, he alleges that he was slammed into the jail bars while he was being moved, and has not sufficiently alleged any actions were intentional. (Doc. # 10 at 10-11). The objective component "focuses on whether the official's actions were 'harmful enough,' *Hudson* [*v. McMillian*], 503 U.S. [1, ]8 [(1992)], or 'sufficiently serious,' *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), to violate the Constitution." *Sconiers*, 946 F.3d at 1265. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). An inmate strip search or body cavity search is constitutional, *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), even if done without an apparent penological purpose. *Moton v. Walker*, 545 F. App'x 856, 860 (11th Cir. 2013). And again, without more detailed allegations about being "slammed" into cell bars, the court cannot infer that Plaintiff has stated a viable Eighth Amendment claim.

14

Additionally, Plaintiff's allegations about not being provided "food I can eat," which he clarifies was vegetarian food (Doc. # 10 at 12-13), is not an actionable Eighth Amendment violation. Although the Eighth Amendment requires prison officials to provide "reasonably adequate food," *Robbins*, 782 F. App'x at 804 (quoting *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985)), "[n]either [the Eleventh Circuit] nor the Supreme Court ha[s] ever held that the Eighth Amendment requires prison officials to indulge inmates' dietary preferences – regardless of whether those preferences are dictated by religious, as opposed to non-religious, reasons." *Id.* at 804-05. Rather, "[a] well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Id.* at 805 (quoting *Hamm*, 774 F.2d at 1569-70, 1575). Plaintiff has not alleged that he was deprived of a well-balanced or nutritional meal. He also has not provided any non-conclusory allegations about any failure to provide him with clean water. His bald, conclusory statement therefore does not provide sufficient detail to plausibly allege that Plaintiff's Eighth Amendment rights were violated.

The rest of Plaintiff's claims against the deputies are likewise wholly conclusory. They assert without elaboration that guards mocked his disabilities, lied about his bond amount, made him wear a "turtle suit," shined flashlights into his cell at night, denied him access to phones, refused to provide him medical help, placed him in the wrong jail population area, worsened his tinnitus disability, and lied to the VA about his medical condition. (Doc. # 10 at 10-13). Because Plaintiff has not plausibly alleged facts to show that any of the deputies violated his constitutional rights, his allegations are insufficient under Rule 8.

In sum, Plaintiff's fourth complaint is replete with conclusory allegations and is largely indecipherable. It is unclear what he is claiming, against whom, and what his plausible factual grounds for those claims are. For all these reasons, Plaintiff's claims against the Jefferson County Sheriff's Department, the Trussville Police Department, the Irondale Police Department, and thirteen deputies are due to be dismissed.

### E.   *DeRomano v. QTC Medical Services, Inc., et al.*, 25-cv-00227

Plaintiff's claims against QTC Medical Services, Dr. Laxmi Challa, Lauren Pope, and Michael Thompson also fail. He alleges that the Department of Veterans Affairs ("VA") referred him to QTC Medical Services, and while four doctors confirmed that he had a medical issue, his disability claim was denied based on a medical opinion from Dr. Challa. (Doc. # 8 at 10, from 25-cv-00227). Plaintiff alleges that he reported to QTC supervisor Pope that these were "lies" because he had never seen Dr. Challa, and he asserts Pope confirmed that Dr. Challa's opinion was improper. (*Id.* at 11-12). Based on this alleged admission, Plaintiff sought further resolution of QTC's purported "medical malpractice and fraud." (*Id.*).

Eventually, QTC stopped responding to Plaintiff. (*Id.* at 12). Plaintiff then called QTC's office locations to tell them he was coming to pull their fire alarms and would be "in [his truck] with [his] 2nd amendment rights." (*Id.* at 12). Michael Thompson represented QTC and moved for a temporary restraining order against Plaintiff in a state court. (*Id.* at 13). When Plaintiff tried to speak with Thompson about QTC's "medical fraud/malpractice," Thompson told him he could only discuss the motion for a temporary restraining order. (*Id.*). During the hearing on that motion, Thompson allegedly "lied" about and altered the evidence offered against Plaintiff. (*Id.*). Plaintiff also makes conclusory allegations about QTC staff mocking him when he threatened to pull the fire alarms (*id.*), QTC committing unspecified HIPAA violations (*id.*), and his service dog dying because of QTC's "lies." (*id.* at 5).

Plaintiff alleges that this conduct violates his constitutional and federal statutory rights, but he fails to state a claim for relief under these provisions. (*See id.* at 3). First, Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, but he does not connect his factual allegations with any of the rights afforded under these amendments – or any other constitutional right. Absent any explanation provided in a short and plain statement as to why he "is entitled to relief," Fed. R. Civ. P. 8(a)(2), Plaintiff has not met the Rule 8 standard.

16

He is not permitted to merely provide "a formulaic recitation of the elements of a cause of action" or rely on only "labels and conclusion" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

Plaintiff next claims that Defendants violated the Health Care Fraud Act and the False Claims Act. The Health Care Fraud Act is a criminal statute, and a private citizen cannot prosecute a criminal action in federal court. *See* 18 U.S.C. § 1347; *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicial cognizable interest in the prosecution or non-prosecution of another.") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). And, while the False Claims Act allows a private person to bring a claim on behalf of the United States Government – otherwise known as a *qui tam* claim – a district court lacks subject matter jurisdiction over a *qui tam* claim that is filed by a pro se plaintiff. *Taylor v. Multiplan Network*, 817 F. App'x 947, 947 (11th Cir. 2020) (citing *Timson v. Sampson*, 518 F.3d 870, 873-74 (11th Cir. 2008)).

For all these reasons, the court does not to have jurisdiction over the federal claims raised in Plaintiff's fifth complaint. Without any federal question jurisdiction (or diversity jurisdiction, which Plaintiff does not claim), the court has no subject-matter jurisdiction over the state law claims of medical malpractice and fraud. *See* 28 U.S.C. § 1331; *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

For these reasons, Plaintiff's claims against QTC Medical Services, Dr. Laxmi Challa, Lauren Pope, and Michael Thompson are due to be dismissed.

**IV.    Conclusion**

For all of these reasons, Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. # 11) is **DENIED WITHOUT PREJUDICE** and the court hereby **ORDERS** that each of these actions shall be, and are, **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. The

Clerk of Court is **DIRECTED** to include a copy of this Order in each of these cases and to close these cases. Costs are to be taxed against Plaintiff.

The Clerk of the Court is **DIRECTED** to mail a copy of this Order to Plaintiff at his address of record.

**DONE** and **ORDERED** this July 14, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE